9FDF
BK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

RAFAEL GONZALEZ

Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER JOSEPH COUGHLIN AND POLICE OFFICER ROBERT DREISS,

Defendants.

---------------------------------------------------------------X

**OPINION & ORDER**
03-cv-1260 (SJF)(CLP)

FILED
IN CLERKS OFFICE
U.S. ------ COURT ED N.Y.
★ JUL 14 2006 ★
P.M. ______
TIME A.M. ______

FEUERSTEIN, J.

I. Introduction

Plaintiff Rafael Gonzalez ("Plaintiff") initiated this action on March 14, 2003, asserting claims under, inter alia, 42 U.S.C. § 1983 arising out of his arrest on March 12, 2002. Plaintiff has voluntarily withdrawn his claims against the City of New York, and the parties have cross-moved for summary judgment on the remaining claims pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, Plaintiff's motion for summary judgment is denied, and Defendants' cross-motion for summary judgment is granted in part and denied in part.

II. Background

Plaintiff was arrested by Detective Joseph Coughlin and Sergeant Robert Dreiss of the New York City Police Department on March 12, 2002 in Queens, New York. (Def/Pl. 56.1 Stmt. ¶¶ 1, 2, 4, 11). Plaintiff claims that he and an acquaintance, Joseph Fermin, were waiting in a parked car for a friend when "an unmarked car approached and the police demanded to know if someone was smoking marijuana." (Pl. Mem. in Supp. at 1; Pl. 56.1 Stmt. ¶¶ 1-2). Defendants claim that Detective Coughlin, while driving with Sergeant Dreiss, "observed two men sitting in

a car parked in front of 118-29 154th Street." (Def. Mem. in Opp/Supp. at 3; Def. 56.1 Stmt. ¶¶ 16). According to Defendants, Detective Coughlin "saw the man sitting in the back seat pass a marijuana cigarette to the man sitting in the front passenger seat." (Def. Mem. in Opp/Supp. at 3; Def. 56.1 Stmt. ¶ 17). Defendants claim that Detective Coughlin was able to determine that the cigarette "was marijuana based on his training and experience as a detective in the Narcotics Division of the New York City Police Department." (Id.; see also Def. 56.1 Stmt. ¶ 18).[1]

The parties agree that Detective Coughlin and Sergeant Dreiss exited their vehicle and approached the vehicle in which Plaintiff and Fermin were seated. (Pl. 56.1 Stmt. ¶ 3; Def. Reply 56.1 Stmt. ¶ 3; Def. 56.1 Stmt. ¶ 23). Defendants claim that "[a]s he approached the car, Detective Coughlin smelled marijuana coming from the car." (Def. 56.1 Stmt. ¶ 24). According to Plaintiff, the officers "demanded to know if someone was smoking marijuana." (Pl. Mem. in Supp. at 1). According to Plaintiff, he "answered in the negative," which prompted the officers to "dr[a]w handguns and approach[] the car . . . ." (Id.; Pl. 56.1 Stmt. ¶ 3). Defendants deny that the officers drew their weapons. (Def. Reply 56.1 Stmt. ¶ 3; Def. 56.1 Stmt. ¶ 30).

Defendants claim that Detective Coughlin, after smelling marijuana, "ordered [P]laintiff and Joseph Fermin to show him their hands. Both men complied and when [P]laintiff raised his hands, Detective Coughlin observed the marijuana cigarette in [P]laintiff's right hand." (Def. 56.1 Stmt. ¶ 26). According to Defendants, "Detective Coughlin then ordered [P]laintiff and Joseph Fermin out of the car." (Id. ¶ 27). Plaintiff agrees that he was ordered "to step out of the

[1] Although Plaintiff has submitted a Rule 56.1(a) Statement in support of his motion for summary judgment, he has failed to submit a Rule 56.1(b) Counter Statement in opposition to Defendants' cross-motion for summary judgment. Pursuant to Rule 56.1(c), the facts set forth in Defendants' Rule 56.1 Statement are deemed admitted. However, I find summary judgment appropriate on the claims dismissed herein even if I were to overlook Plaintiff's failure to controvert Defendants' Rule 56.1 Statement.

car." (Pl. 56.1 Stmt. ¶ 5). Plaintiff claims, however, that upon "emerg[ing] from the car, he was grabbed, shaken violently, yanked from his seat and then the left side of his head was slammed onto the hood of the car three or four times." (Pl. 56.1 Stmt. ¶ 7). Defendant denies this allegation, (Def. Reply 56.1 Stmt. ¶ 7), and claims that "[a]t no point did Detective Coughlin grab [P]laintiff or pull [P]laintiff out of the car." (Def. 56.1 Stmt. ¶ 29).

Defendants claim that Plaintiff and Fermin, upon exiting the car, were "frisked for the safety" of the officers. (Def. 56.1 Stmt. ¶ 31). According to Plaintiff, however, after "smack[ing] [P]laintiff around," (Pl. Mem in Supp. at 11), "[t]he police officer then said 'Look nigger, just tell us where the drugs are at.'" (Pl. 56.1 Stmt. ¶ 8). Defendants deny this allegation, and state that "[a]t no time did Detective Coughlin or Sergeant Dreiss use any derogatory remark to [P]laintiff." (Def. Reply 56.1 Stmt. ¶ 8). Plaintiff claims that "the police officer" next told him to "empty out his pockets and then the police officer went into [P]laintiff's pockets, took everything out and put the contents into a brown envelope. The police officers called for back-up and then searched the vehicle: the trunk, the glove compartment, flipped the seats, looked underneath the car and around in the bushes." (Pl. 56.1 Stmt. ¶ 9-10) (paragraph break and numbering omitted). Defendants agree that a search incident to arrest was conducted, but deny "search[ing] the entire car or call[ing] for additional police officers to arrive on the scene." (Def. Reply 56.1 Stmt. 9-10).

Plaintiff claims he was then handcuffed with his hands behind his back, and placed "into a minivan with other persons." (Pl. 56.1 Stmt. ¶ 11). Defendant agrees that Plaintiff was handcuffed and placed in a "police vehicle." (Def. Reply 56.1 Stmt. ¶ 11). Upon arrival at the police precinct, Plaintiff claims that he "was fingerprinted, photographed and strip searched

('squat, cough, spread your cheeks.')." (Pl. 56.1 Stmt. ¶ 12). Defendants claim that "[a]t no time did Detective Coughlin or Sergeant Dreiss conduct a strip search of [P]laintiff at the 113th Precinct." (Def. Reply 56.1 Stmt. ¶ 12). Defendants further claim that Plaintiff "does not identify Detective Coughlin or Sergeant Dreiss as the officer who allegedly strip searched him." (Def. 56.1 Stmt. ¶ 50). Plaintiff also claims that he "remained in handcuffs for many hours, until taken to Central Booking, and the handcuffs were too tight; [P]laintiff's hands were turning blue." (Pl. 56.1 Stmt. ¶ 13). Defendants deny this allegation, and claim that Plaintiff never complained that he was in pain during the entire time he was at the 113th Precinct. (Def. 56.1 Stmt. ¶ 54). Defendants further claim that Plaintiff "has no recollection of ever telling Detective Coughlin or Sergeant Dreiss that the handcuffs placed on him were too tight." (Def. 56.1 Stmt. ¶ 43).

Plaintiff was charged with Criminal Possession of Marijuana in the Fifth Degree (Criminal Possession of Marijuana in a Public Place). (Def. 56.1 Stmt. ¶ 55; Def. Ex. F). Plaintiff claims that the alleged marijuana cigarette was, in fact, a "wrapped Dutch Masters cigar from [P]laintiff's jacket pocket." (Def. 56.1 Stmt. ¶ 16). Defendants deny this allegation, and state that "[a] marijuana cigarette was recovered from [P]laintiff's person." (Def. Reply 56.1 Stmt. ¶ 16). According to Defendants, "[t]he marijuana that was recovered from [P]laintiff's person on March 12, 2002 was destroyed by the New York City Police Department in the normal course of business." (Def. Reply 56.1 Stmt. ¶ 19).

Plaintiff was arraigned the following day, where he "accepted an adjournment in contemplation of dismissal." (Def. 56.1 Stmt. ¶ 69; <u>see also</u> Pl. 56.1 Stmt. ¶ 18) ("[P]laintiff took an ACD . . . .").

III. Analysis

"Qualified immunity 'shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known.'" Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir. 2005) (quoting, in part, Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999)." Qualified immunity is "a shield from suit, not simply liability." Holeman, 425 F.3d at 189 (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).

The Supreme Court in Saucier established a "two-step process," Holeman, 425 F.3d at 189, for determining whether a suit against a police officer may proceed: "(1) the court must determine whether the facts, taken in the light most favorable to the party asserting an injury, show a violation of a constitutional right; and (2) the court must determine whether the constitutional right was 'clearly established' such that 'the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Saucier, 533 U.S. at 201-06) (internal brackets omitted)).

"Because qualified immunity is designed to protect police officers from liability and suit when their actions are objectively reasonable, courts are instructed to 'resolve questions of reasonableness on summary judgment . . . where the *material facts are not in dispute* . . . .'" Wright v. Wilburn, 194 F.R.D. 54, 59-60 (N.D.N.Y. 2000) (quoting Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995) (emphasis added by Wright Court)). "Thus, in cases where the facts underlying the availability of the defense are undisputed, a court may properly decide the qualified immunity issue. However, if determining the objective reasonableness of the police officer's conduct requires further fact finding, it is appropriate to submit the issue of qualified

immunity to the jury." Wright, 194 F.R.D. at 60 (citing Lennon, 66 F.3d at 421)); see also Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994) ("Though immunity ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required.") (internal citations and quotations omitted).

A. Initial Stop, Arrest, Search and Seizure

The parties have offered differing accounts of the events surrounding Plaintiff's arrest. Defendants claim that Detective Coughlin observed Plaintiff and Fermin sharing a marijuana cigarette, and that Detective Coughlin subsequently smelled marijuana. According to both Plaintiff and Fermin, however, Plaintiff possessed only a wrapped cigar in his pocket. Defendants also claim that they did not draw their weapons, and that Detective Coughlin did not "smack" Plaintiff. (Pl. Mem. in Opp. at 11). Plaintiff claims, however, that the officers did draw their weapons, and claims that Detective Coughlin treated him with excessive force. Finally, Defendants claim that they only conducted a limited search incident to arrest. Plaintiff, by contrast, claims that Defendants called for back-up, and conducted an extensive search, including the trunk of the car.

Because the parties offer "contrasting accounts present[ing] factual issues," Lovelace v. City of New York, 02-cv-5398 (FB), 2005 U.S. Dist. LEXIS 3549, at *15 (E.D.N.Y., Mar. 9, 2005) (quoting Curry v. City of Syracuse, 316 F.3d 324 (2d Cir. 2003)), the determination of whether Defendants acted in an objectively reasonable manner must be left for the jury. The parties' cross-motions for summary judgment are therefore denied for the claims of (1) false arrest, (2) illegal search incident to arrest, and (3) excessive force (other than related to the

handcuffs, discussed *infra*).

B. Strip Search

Defendants have offered evidence that neither of the Defendants in this action participated in a strip search of Plaintiff. Plaintiff has not offered any evidence to the contrary, and has conceded that he cannot identify the officer or officers who did conduct the alleged strip search. (Def. 56.1 Stmt. ¶ 50; see also Frommer Decl., Ex. J, p. 145, ll. 17-19). "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Because Plaintiff has not offered any evidence indicating that either Detective Coughlin or Sergeant Dreiss were involved in the alleged strip search, Plaintiff's claims against them arising out of this incident are dismissed.

C. Handcuffs

Plaintiff alleges that Defendants used excessive force by handcuffing him too tightly. An "allegation of sore, yet uninjured, wrists simply does not rise to the level of objective excess that reasonable police officers would consider to be unlawful conduct in an arrest situation." Wilder v. Vill. of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (Platt, J.); see also Stefanopoulos v. City of New York, 01-cv-0771 (SJ), 2005 U.S. Dist. LEXIS 22445, at *7 (E.D.N.Y., Mar. 2, 2005) ("[A]ssuming arguendo that Plaintiff could prove that he sustained minor injuries from the handcuffs, this fact alone is insufficient to constitute a Fourth Amendment claim of unreasonable force.") (citing, inter alia, Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)). Plaintiff has not offered any evidence indicating that the allegedly tight

handcuffs caused a sufficiently severe injury to his wrists, compare Simpson v. Saroff, 741 F.Supp. 1073, 1078 (S.D.N.Y. 1990) (denying summary judgment where plaintiff suffered swollen, bleeding, and scarred wrists), and his claim is therefore dismissed.

D. Malicious Prosecution

Defendants seek summary judgment on the malicious prosecution claim on the ground that Plaintiff accepted an ACD. "It is the law of this Circuit that section 1983 claims for malicious prosecution may not be maintained after the acceptance of an ACD." Sorensen v. City of New York, 98 Civ. 3356 (HB), 1999 U.S. Dist. LEXIS 10927, at *6-7 (S.D.N.Y., July 20, 1999) (citing Roesch v. Otarola, 980 F.2d 850, 853-54 (2d Cir. 1992)). Because Plaintiff accepted an ACD, his malicious prosecution claim is dismissed.

IV. Conclusion

Plaintiff's motion for summary judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED IN PART and DENIED IN PART. The parties are directed to appear for a status conference before the undersigned on July 17, 2006 at 11:00 a.m. at the United States Courthouse in Brooklyn, New York in Courtroom 4N.

IT IS SO ORDERED.

Sandra J. Feuerstein
United States District Judge

Dated: July 7th, 2006
Brooklyn, New York

To:

John Wyman Cobb
Cobb & Cobb, Esqs.
P.O. Box 419
233 Route 17
Tuxedo, NY 10987

Hillary A. Frommer
Corporation Counsel for the City of New York
Law Department
100 Church Street
New York, NY 10007